**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0607-15T2


ROBERT J. TRIFFIN,

    Plaintiff-Appellant,

v.

UNITED STATES FIRE INSURANCE
CO., Individually and d/b/a
CRUM & FORSTER,

    Defendant-Respondent,

and

JUAN PINERO,

    Defendant.

_____

        Argued April 6, 2017 — Decided June 12, 2017

        Before Judges O'Connor and Whipple.

        On appeal from Superior Court of New Jersey,
        Law Division, Camden County, Docket No. DC-
        2147-13.

        Robert J. Triffin, appellant, argued the
        cause pro se.

        Michael F. Bevacqua, Jr. argued the cause
        for respondent (Mandelbaum Salsburg, P.C.,
        attorneys; Mr. Bevacqua, of counsel and on
        the brief).

PER CURIAM

Plaintiff Robert J. Triffin brings this action to recover on a dishonored check defendant United States Fire Insurance Company, Inc. (USIF) issued to the order of defendant Juan Pinero. Plaintiff appeals from the following four Special Civil Part orders: (1) the April 2, 2015 order compelling him to pay $300 to restore his complaint; (2) the April 24, 2015 order denying his motion for reconsideration of the April 2, 2015 order; (3) the July 24, 2015 order granting USIF summary judgment dismissal; and (4) the September 4, 2015 order denying plaintiff's motion for reconsideration of the July 24, 2015 order.[1] After reviewing the record and the parties' briefs, we affirm in part and reverse in part.

                                I

We discern the following facts from the motion record. In March 2012, USIF issued a check for $848 for disability benefits to Pinero. On April 24, 2012, Pinero contacted USIF and reported he had not received the check. That same day, USIF directed its bank to stop payment on the check. Despite the stop payment order, on May 3, 2012, the original check was

_____

[1] Defendant Pinero failed to file a responsive pleading and, after entry of default, plaintiff obtained a default judgment against him.

2

cashed at Pennsauken Check Cashing (PCC), a licensed check cashing business.

On the back of the check appears what purports to be Pinero's signature, endorsing the instrument in blank. Above his signature is a stamped restrictive endorsement stating, "For Deposit Only Atlantic City Check Cashing 05/03/2012."[2] Atlantic City Check Cashing (ACCC) is also a check cashing business. Below the endorsement area of the check is a stamp stating, "Pay to the Order of Republic Bank of Chicago[,] . . . Pennsauken Check Cashing[,] Licensed Cashier of Checks[.]" The specific order of the three endorsements was Pinero's purported blank endorsement, followed by ACCC's restrictive endorsement, and then PCC's restrictive endorsement.

Because of USIF's stop payment order, the Republic Bank of Chicago dishonored the check when PCC presented it for payment. Five months later, plaintiff and PCC entered into an assignment agreement, in which plaintiff purchased PCC's rights to the dishonored check. Plaintiff then filed a complaint in the Special Civil Part against USIF as the drawer of the check and

---

[2] The copy of the back of the original check is difficult to read, but the record clarifies and the parties do not dispute the content of this endorsement. At one point during the litigation, plaintiff asserted Atlantic City Check Cashing's endorsement was "obliterated," but subsequently retracted this contention.

3

against Pinero as the payee. Plaintiff claimed he held the rights of a holder in due course and sought to recover the full amount of the draft, $848, plus statutory interest and fees.

During the litigation, the trial court entered an order on April 30, 2013, dismissing plaintiff's complaint with prejudice because plaintiff failed to provide court-ordered discovery. Plaintiff appealed and we reversed the order, finding plaintiff's violation of the subject discovery order should have been addressed by a sanction less severe than a dismissal of his complaint with prejudice. See Triffin v. U.S. Fire Ins. Co., No. A-0225-13 (App. Div. Dec. 23, 2014).

After the matter was remanded in December 2014, plaintiff failed to produce the discovery he had been ordered to provide back in 2013. The ordered discovery included various answers to interrogatories and responses to USIF's notice to produce.

USIF filed a motion to sanction plaintiff because of his continued failure to serve the subject discovery and, on April 2, 2015, the court entered an order dismissing plaintiff's complaint without prejudice. In addition, the court directed the outstanding discovery be served upon USIF no later than June 1, 2015, and that plaintiff pay a $300 restoration fee.

On April 24, 2015, plaintiff's motion for reconsideration of the April 2, 2015 order, in which plaintiff argued the court

4

erred by imposing the $300 restoration fee, was denied.  On or about May 1, 2015, plaintiff served USIF with all remaining discovery and paid the $300 restoration fee.  It is not clear from the record when plaintiff filed his motion to restore his complaint, but he asserts and USIF does not dispute that motion was filed within thirty days of the April 2, 2015 order of dismissal.  On June 5, 2015, plaintiff's complaint was restored.

Thereafter, on July 24, 2015, the trial court granted USIF summary judgment dismissal.[3]  On September 4, 2015, plaintiff's motion for reconsideration of the July 24, 2015 order was denied.  In its oral opinion, the trial court explained its reasons why USIF was entitled to summary judgment dismissal:

> Plaintiff claims to have the rights of a holder in due course of the subject check, which entitles him to enforce the instrument against the drawer by virtue of an assignment agreement between him and PCC. . . .
>
> The court found that to enforce USIF's obligations with respect to the check, the plaintiff had to show that he was either a holder of the check or a nonholder in possession who has the rights of a holder.
>
> The court found he could show neither.

---

[3]  Plaintiff complains there is no order stating his cross motion for summary judgment was denied.  We deem it implicit that when USIF was granted summary judgment dismissal, plaintiff's cross motion for summary judgment was denied.

First, the check contained three endorsements.  The first is by the original payee, Juan Pinero.  That Pinero is the original endorser is made clear by the fact that he was the payee on the check and therefore only he could negotiate it.

The second endorsement is by Atlantic Check Cashing.

And the third endorsement is by Pennsauken Check Cashing.

There is no endorsement to plaintiff.  As a result, plaintiff cannot be a holder of the check through negotiation because — because negotiation would require both an endorsement to the plaintiff and delivery to him of . . . the check.

[Thus,] [p]laintiff's only option to become a holder of the check is by way of an assignment and delivery of the check from a previous holder of that instrument.

Now, to obtain this status, plaintiff had to show that he obtained the check as a result of an assignment and delivery of the check to him by a holder.  See N.J.S.A. 12A:3-301 — 12A:3-203(b), and 12A:3-203.

Plaintiff has failed to make this showing.  As noted, Juan Pinero is the first endorser of the check as between Atlantic and Pennsauken, Atlantic is the second endorser, and Pennsauken is the third endorser.

This is clear from the facts of the case and from the endorsements on the back of the check.

Pennsauken's endorsement has to be the last because it was necessary for the check to be deposited into the Republic Bank of Chicago . . . .

6

Accordingly, Atlantic's endorsement was second, after Pinero's endorsement, but before Pennsauken's endorsement. Thus, the chain of endorsements was Pinero to Atlantic to Pennsauken.

But plaintiff's assignment of the check is from Pennsauken. Thus, for plaintiff to be a nonholder in possession with the rights of a holder, Pennsauken had to first be a holder. In order for Pennsauken to be a holder, a prior holder had to negotiate, in other words, sign and deliver the check to Pennsauken. [Because,] [t]he holder of the check before Pennsauken was Atlantic[,] . . . Atlantic had to endorse and deliver the check [to] Pennsauken.

However, . . . Atlantic's endorsement of the check was restrictive. Specifically, Atlantic's endorsement of the check was for deposit only. The U.C.C. states the following with respect to restrictive endorsement[s]: If an instrument bears [a]n endorsement in blank or to a particular bank using the words "for deposit," . . . the following rules apply.

A depository bank that purchases the instrument or takes it for collection when so endorsed converts the instrument, unless the amount paid by the bank with respect to the instrument is received by the endorser or applied consistent with the endorsement. N.J.S.A. 12A:3-206(c). Accordingly, by taking the check for collection . . . from Atlantic, Pennsauken became a converter of the check with respect to Atlantic, not USIF, unless it paid Atlantic for the check.

Plaintiff has proffered no evidence that Pennsauken paid Atlantic for the check. Accordingly, Pennsauken is a converter of the check with respect to Atlantic and not,

7

as plaintiff mistakenly contends, with respect to USIF. . . .

Here, because Pennsauken is a converter of the check, pursuant to [N.J.S.A.] 3-206(c), it cannot be a holder of the check.  And because Pennsauken is not a holder of the check, plaintiff cannot be nonholder in possession of the check with the rights of a holder[,] inasmuch as having that status required him to take the check from a holder.

In sum, plaintiff cannot enforce the check because he's neither a holder nor a nonholder in possession with the rights of a holder.  There are no other means for him to enforce the check.  See N.J.S.A. 12A:3-301.

This appeal ensued.

II

Plaintiff presents the following points for our consideration:

Point I: THE TRIAL COURT DID NOT HAVE THE AUTHORITY TO DEVIATE FROM THE MANDATED RESTORATION FEES SET FORTH IN RULE 6:4-4.

POINT II: [THE TRIAL COURT] COMMITTED REVERSIBLE ERROR WHEN [IT] FAILED TO APPREHEND [SIC] THAT [DEFENDANT] WAIVED THE ISSUE OF THE ENFORCEABILITY OF ACCC'S "FOR DEPOSIT ONLY" STAMP ON USIF'S DISHONORED CHECK.

POINT III: [THE TRIAL COURT] COMMITTED REVERSIBLE ERROR WHEN [IT] MISAPPLIED THE CONTROLLING LEGAL STANDARDS TO THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT.

8

As for plaintiff's first argument, we are satisfied the court mistakenly exercised its discretion when it ordered plaintiff to pay a $300 restoration fee. Rule 6:4-6 provides in pertinent part:

> The provisions of R. 4:23 (sanctions for failure to make discovery) shall apply to actions in the Special Civil Part, except that:
>
> . . . .
>
> (b) Restoration Fees. The amounts of the restoration fees of $100 and $300 specified in R. 4:23-5(a) are reduced to $25 if the motion is made within 30 days and $75 thereafter.

Here, it is uncontested plaintiff filed his motion to restore his complaint within thirty days of the order dismissing his complaint. Therefore, the restoration fee in this Special Civil Part matter was $25, not $300. Accordingly, the provision in the April 2, 2015 order compelling plaintiff to pay a $300 restoration fee and the April 24, 2015 order denying his motion for reconsideration of the April 2, 2015 order are reversed.

However, we discern no merit in plaintiff's remaining arguments. Having fully considered these points in light of the record and the applicable law, we affirm the July 24, 2015 and September 4, 2015 orders for substantially the same reasons expressed by the trial court in its oral opinion on September 4,

9

2015.  In the final analysis, in order for plaintiff to enforce this negotiable instrument under these circumstances, plaintiff must either be a "holder" of the instrument or a "nonholder in possession of the [negotiable] instrument . . . [with] the rights of a holder."  See N.J.S.A. 12A:3-301.  There is no evidence plaintiff was either.  The July 24, 2015 and September 4, 2015 orders are therefore affirmed.

To the extent we have not addressed any specific argument advanced by plaintiff, it is because we found such argument without sufficient merit to require discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

Affirmed in part and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0607-15T2